**JOSEPH W. WATKINS, P.C.**
Joseph W. Watkins **(SBN# 012403)**
1661 N. Swan, Suite 138
Tucson, Arizona 85712
Ph: (520) 882-9115
Joewlaw2@gmail.com
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Charisse and Warren Lewis, husband and wife**<br><br>    Plaintiffs,<br><br>        v.<br>**Aramark Sports and Entertainment Services, LLC. ("Aramark") a Delaware Corporation and The United States of America, a governmental entity,**<br><br>    Defendant, | **Case No.  3:19-CV-08345-JJT**<br><br>**COMPLAINT**<br>**(In Admiralty)** |

For their Complaint, Charisse and Warren Lewis (the "Lewis's"), allege as follows:

### JURISDICTION

1.     The Lewis's are husband and wife and reside in Utah.

2.     This is a personal injury claim brought on behalf of the Lewis's which occurred upon the navigable waters of the United States of America, on Lake Powell, within the territory of the State of Arizona.

3.     Aramark Sports and Entertainment Services, LLC ("Aramark"), is a Delaware limited liability company which, as part of its business, operates tour vessels and marina services on Lake Powell and is the exclusive concessionaire for the National Park Service on Lake Powell.  The M/V Desert Shadow (USCG #1045958), the vessel which caused the damages in this case has its home port in Page, Arizona.

4.      Defendant, United States of America ("USA", has waived sovereign immunity by virtue of the Suits in Admiralty Act, 46 U.S.C. § 30901, et seq. Defendant, United States of America, is hereinafter referred to as ("USA").

5.      The USA, by and through the National Park Service, ("NPS") and the United States Coast Guard ("USCG") maintain, control and oversees law enforcement issues on Lake Powell.

6.      The incident and personal injuries described below had the potential to disrupt maritime commerce.

7.      Based upon the foregoing, this Court has Admiralty subject matter jurisdiction over this Claim pursuant to 28 U.S.C. §1333 and Article III, Section 2 of the United States Constitution.

8.      Venue is proper in this Court.

**GENERAL ALLEGATIONS**

9.      On or about September 27, 2019, the Lewis's were boating with friends on Lake Powell, Arizona, in the vicinity of Navajo Canyon.

10.      A tour vessel, The M/V Desert Shadow, operated by Aramark was traveling in the opposite direction of the Lewis's boat.

11.      The M/V Desert Shadow, which displaces 64 tons empty, was rounding a bend as it approached the Lewis's boat traveling at a high and unsafe speed resulting in a large wake in the channel area. The M/V Desert Shadow did not sound a horn or give any other audible notification, as required by the USCG Inland Marine Navigational Rules, to other boaters as it rounded the bend. The vessel, at speed, is shown below.



12.     Due to the confined Canyon, Larry Meador, the operator of the boat the Lewis's were on, had no opportunity to avoid the wake.

13.     The wake produced by the Desert Shadow literally stopped the Meador boat in its tracks with witnesses stating the wake was large enough to lift the boat almost vertically. Charisse Lewis was a passenger in the boat sitting in the stern when the wake hit.

14.     Other members of the Meador/Lewis party were on jet skis following the Meador boat up the Navajo channel on Lake Powell with all members of the party operating their watercraft in a safe and reasonable manner.

15.     The wake from the Desert Shadow, having abruptly stopped the forward motion of the Meador boat, passed under the boat and washed over and around the adjacent canyon wall literally washing one of the jet skis over the stern of the boat with the jet ski striking Ms. Lewis directly in the head.

16.     Ms. Lewis suffered, to her head, neck, shoulders and back and sustained a severe concussion/traumatic brain injury.

17.     Ms. Lewis has been in constant treatment for her injuries which affected not only her, but the family business owned and operated by Ms. Lewis and her husband Warren Lewis.

18.     Aramark has a long history of causing maritime casualties on Lake Powell similar to the incident alleged herein due to the negligent operation of its tour vessels including multiple, severe accidents from at least 2006 throughout the fall of 2019 predating the Lewis incident.

19.     A fatal accident occurred on Lake Powell in September 2006 caused, in part, by the "careless operation" of an Aramark tour vessel while navigating the waters near the area where the subject incident occurred.

20.     In a 2006 report drafted by Marine Consultant Augusto Villalon for the U.S. Coast Guard, it was determined that the fatal incident occurred in part because of "A carless operation of a heavy tour vessel which creates a large wake in a narrow area of the channel" by Aramark. This report has been disclosed to Aramark and its management on multiple occasions preceding September 27, 2019.

21.     Recommendations made by the investigator for the Coast Guard specifically included replacing Aramark's current fleet of tour vessels with catamaran technology that operate with "virtually no wake. USCG, "Tiger Team Report", December 3, 2006.

22.     In 2009, a report was prepared on behalf of the National Park Service titled *Wake Injuries in Glen Canyon National Recreation Area: A More Extensive Evaluation and Detailed Potential Interventions to Manage Risk of Future Injuries* (hereinafter, "NPS Report").

23.     The NPS Report evaluated information from July 2008 through July 2009. The report noted that, during the sample period, there were 18 wake related injuries on lower Lake Powell, 50% of which were attributed to tour vessel wakes. *Aramark is the exclusive tour vessel concessionaire on Lake Powell.*

24.     Aramark was not only aware of the NPS Report, it actively refused to participate in the report process, restricting all interaction of Aramark employees from the

NPS investigator. This report has been disclosed to Aramark and its management on multiple occasions preceding September 27, 2019.

25. Like the previous Coast Guard Report, the NPS Report specifically recommended that ARAMARK "***invest in newer vessels with alternative hull designs. Different hull styles such as catamarans, hydrofoils and small-water plane-area twin-hull (SWATH) boasts have much less resistance in the water and therefore create less wake.***" *NPS Report, dated September 21, 2009.*

26. Aramark has consistently failed to file mandatory accident reports with the United States Coast Guard with respect to accidents involving its fleet including the M/V Desert Shadow operating on Lake Powell.

27. Aramark has consistently failed to provide adequate training regarding wake safety to its crews and with respect to the USCG Inland Marine Navigational Rules.

28. Aramark's management is aware of, and has consented to, the on-going negligent and dangerous operation of its tour vessels by Aramark employees, resulting in large and dangerous wakes over a period of nearly two decades which have caused numerous physical injuries and property damage, as well. This behavior has been the subject of prior Federal Court litigation and has been addressed in multiple depositions of Aramark employees all of which pre-date the events alleged herein.

29. The USA, through the NPS and USCG is charged with both law enforcement on Lake Powell and with managing and renewing the Aramark tour boat concessions on Lake Powell.

30. The USA and its employees have known of Aramark's grossly negligent operation of its tour boat operations for years, yet still renew Aramark's operating and license privileges on Lake Powell without any legitimate oversite.

/ / /

**COUNT I**
**NEGLIGENCE**
(All Defendants)

31.     The Lewis's re-allege and incorporate paragraphs 1 – 25 by reference herein, as if fully alleged and further alleges:

32.     Aramark owed the Lewis's the duty to exercise reasonable care under the circumstances.

33.     Aramark breached its duty by:

a.     Selecting a tour vessel designed in such a way as to produce a significant wake when traversing channels;

b.     Continuing to use a tour vessel on Lake Powell designed in such a way as to produce a significant wake after two separate reports had been issued recommending the use of alternative designs that produce lesser wakes; and after the same, exact issue has been litigated multiple times since 2015.

c.     Operating the tour vessel at a rate of speed greater than was reasonable and prudent under the conditions and/or with disregard to the actual and potential hazards, including the tour vessel's wake,

d.     Failing to observe vessel traffic in the channel, failure to use a warning horn as mandated by law and failing to operate the tour vessel in such a manner as to not produce a significant wake as to cause injury to people aboard nearby vessels; and,

e.     Failing to maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation in order to avoid the risk of collision including the any risk of injury from the wake produced by the tour vessel.

f.     Failing to take any steps to disseminate accident information involving wake-related incidents to its crews and by failing to implement any risk management

protocol to address the numerous, repetitive accidents caused by its crews' failure

to adhere to fed.

34.     The USA owes a duty to Lake Powell users such as the Lewis's to enforce

the existing laws pertaining to boat operations on Lake Powell.

35.   Despite notice of on-going violations by Aramark in its tour operations on Lake

Powell, the USA through the NPS and USCG have consistently "looked the other way" and

either failed or refused to cite Aramark and its crews with respect to Aramark's repeated

violations breaching its obligations to Lake Powell visitors like the Lewis's and making the

Lake a far more dangerous place, contributing to accident causation with respect to

members of the public, in this case, the Lewis family.

36.     The above alleged negligence caused the Lewis's to suffer the injuries and

loss of consortium as alleged herein.

## COUNT II
(NEGLIGENCE PER SE, STATE LAW)

37     The Lewis's re-allege and incorporate paragraphs 1–29 by reference herein,

and further allege:

38.     Arizona Statutes, Title 5, Chapter 3, Boating and Water Sports, Article 5,

"Operation of Watercraft," § 5-343, Speed restrictions; excessive wake," provides that:

> No person shall operate a watercraft in excess of the posted
> limit or at a speed greater than is reasonable and prudent
> under the conditions and having regard to the actual and
> potential hazards then existing. In every event, speed shall be
> so controlled as may be necessary to avoid colliding with any
> person or other watercraft, swamping other watercraft or
> otherwise endangering the lives or property of other persons.

39.     This safety statute was enacted for the explicit purpose of establishing the

duty of a vessel operator to avoid the risk of harm from the creation of a wake by vessels.

40.     This statute applies to the operation of any vessel on Lake Powell and Aramark's own internal operating guidelines mandate crew compliance with all state and federal laws.

41.     The Lewis's are members of the class for which this statute was enacted to protect.

42.     Aramark violated this statute as it operated the tour vessel at a speed greater than is reasonable and prudent under the conditions and had disregard to the actual and potential hazards existing in the channel.  Furthermore, Aramark failed to control the speed of the tour vessel as may be necessary to avoid endangering the lives of other persons aboard nearby vessels operating in the subject channel.

43.     Aramark's violation of the safety statutes establishes the presumption under the Pennsylvania Rule that Aramark caused Charisse Lewis to sustain the injuries alleged herein.

### COUNT III
NEGLIGENCE PER SE
(Violation of Inland Navigation Rules)

44.     The Lewis's re-allege and incorporate all prior allegations and further allege:

45.     The Inland Rules of Navigation apply to the operation of all commercial vessels on Lake Powell.

46.     USCG Inland Navigation Rule 5, titled, "Lookout" provides:

> Every vessel shall at all times maintain a proper look-
> out by sight and hearing as well as by all available
> means appropriate in the prevailing circumstances and
> conditions so as to make a full appraisal of the situation
> and of the risk of collision.

47.     Aramark failed to maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions.

48.    USCG Inland Navigation Rule 6, titled "Safe Speed" provides

Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions. In determining a safe speed the following factors shall be among those taken into account:

(a) By all vessels:

(i)      The state of visibility;
(ii)     The traffic density including concentrations of fishing vessels or any other vessels;
(iii)    The manageability of the vessel with special reference to stopping distance and turning ability in the prevailing conditions;
(iv)    At night, the presence of background light such as from shore lights or from back scatter from her own lights;
(v)     The state of wind, sea and current, and the proximity of navigational hazards;
(vi)    The draft in relation to the available depth of water.

(b) Additionally, by vessels with operational radar:

(i)      The characteristics, efficiency and limitations of the radar equipment;
(ii)     Any constraints imposed by the radar range scale in use;
(iii)    The effect on radar detection of the sea state, weather and other sources of interference;
(iv)    The possibility that small vessels, ice and other floating objects may not be detected by radar at an adequate range;
(v)     The number, location and movement of vessels detected by radar;
(vi)    The more exact assessment of the visibility that may be possible when radar is used to determine the range of vessels or other objects in the vicinity.

9

49.     Aramark failed to maintain a safe speed as required by USCG Inland Navigational Rule 6.

50.     Aramark's violation of one or both Inland Navigation Rules alleged above places the presumption under the Pennsylvania Rule that it caused Charisse Lewis's injuries as alleged herein.

## COUNT IV
(Exemplary Damages)

51.     The Lewis's reincorporate all prior allegations herein.

52.     The factual allegations above show both a pattern and practice of grossly negligent activity combined with a reprehensible lack of concern for public safety over a period of many years sufficient to warrant the imposition of punitive damages in this case.

53.     Aramark, for purposes of limiting its liability, stated the value of the M/V Desert Shadow at $1,600,000 in unrelated Court filings in 2015.

54.     Aramark revenue summaries for 2017 and 2018 show total ticket revenue for the tour boat fleet in 2017 of $6,405,847.56 and revenue for 2018 in the total amount of $6,734,095.18.

55.     The M/V Desert Shadow ticket revenue of nearly $2,600,000 annually exceeds the total value of the vessel by nearly $1,000,000.00. The vessel was purchased in 1996.

56.     Aramark's refusal to transition its fleet into low wake vessels, or simply slow down, despite nearly 2 decades of notice, creates a presumption that Aramark places profit over safety at the risk of every individual boating on the Lake warranting an imposition of exemplary damages of not less than one year's fleet ticket revenue, $6,734,095.18, to deter Aramark's long-time tortious conduct as outlined herein.

**WHEREFORE**, the Lewis's demand all damages entitled by law, including compensatory damages of not less than $1,500,000 from all Defendants and punitive damages of not less than $6,734,095.18 from Aramark, plus taxable costs and pre & post judgment interest.

Dated: September 15, 2021.

**JOSEPH W. WATKINS, P.C.**

/s/ Joseph W. Watkins
Joseph W. Watkins
A*ttorney for Charisse and Warren Lewis*