**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charisse Lewis, et al., | No. CV-21-08201-PCT-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Aramark Sports and Entertainment Services LLC, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Charisse and Warren Lewis' ("Plaintiffs") Motion for Summary Judgment on the issue of punitive damages (Doc. 37). Defendant Aramark Sports and Entertainment Services LLC ("Aramark") filed a Response in opposition (Doc. 38). Plaintiff filed a Reply (Doc. 39).

In November of 2021, Judge Tuchi held a four-day bench trial in *Meador v. Aramark*, Case 3:19-cv-08345-JJT, which concerned the same accident at issue here and where Aramark was also a defendant. The parties are set to engage in a settlement conference with Judge Burns on December 15, 2022. (Doc. 59).

**I.     Background**

Plaintiffs sued Aramark alleging negligence and seeking punitive damages. (Doc. 1). Aramark filed a Counterclaim against Plaintiff-Counter Defendant Larry Meador and Wesley Lewis seeking equitable indemnity and contribution. (Doc. 7).

On September 27, 2019, Larry Meador ("Mr. Meador") was operating his boat ("Meador boat") on Lake Powell in the Navajo Canyon area. (Doc. 37-1 at 1). Annette

Meador ("Ms. Meador"), Emily Lewis, Charisse Lewis ("Ms. Lewis"), and Maeson Lewis were also on board the Meador boat. (*Id.* at 2). Several of Ms. Lewis's adult children were on jet skis behind the Meador boat. (*Id.*) Aramark's 76-foot M/V Desert Shadow (the "Desert Shadow") was also on Lake Powell traveling in the opposite direction of the Meador boat. (*Id.*) As Plaintiffs traveled up the channel and approached the right-hand turn into the canyon, the Desert Shadow rounded the left turn to exit the canyon and passed Plaintiffs' boat on its left (port) side. (*Id.*) The Desert Shadow generated a wake when it passed the Meador boat and, upon impact with the wake, the Meador boat's bow rose into the air before it crashed back down into the water. (*Id.*) Ms. Lewis's son, Wesley, could not stop the jet-ski and ran into the back of the Meador boat, hitting Ms. Lewis in the head. (Doc. 41 at 2). Ms. Lewis suffered a traumatic brain injury. (Doc. 39 at 2).

## II. Discussion

Plaintiffs seek summary judgment on the issue of punitive damages, arguing that the punitive damages allegations here are identical to the punitive damages allegations in *Meador* and therefore collateral estoppel applies. (Doc. 37 at 2–3). Aramark contends the causation at issue in *Meador* is different from the causation at issue here and that the question of causation "is critical with respect to whether collateral estoppel may be applied to the prior punitive damages ruling." (Doc. 38 at 3).

This case falls under the Court's admiralty jurisdiction, so federal maritime law applies. *East River S.S. Corp. v. Transamerica Delval Inc.*, 496 U.S. 858, 864 (1986). Federal admiralty law preempts state law, but federal courts may apply state law by express or implied reference where the federal admiralty law is incomplete. *See Baggett v. Richardson*, 473 F.2d 863, 864 (5th Cir. 1973). The Ninth Circuit has explained that "the general rule on preemption in admiralty cases is that states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not actually conflict with federal law or interfere with the *uniform working* of the maritime legal system." *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1422 (9th Cir. 1990) (emphasis in original).

Collateral estoppel promotes "judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Collateral estoppel, or issue preclusion, prevents a defendant from relitigating an issue which the defendant previously litigated and lost against another plaintiff, if (1) there was a full and fair opportunity to litigate the identical issue in the prior action (2) the issue was actually litigated in the prior action (3) the issue was decided in a final judgment and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action. *Shaffer v. R.J. Reynolds Tobacco Co.*, 860 F. Supp. 2d 991, 995 (D. Ariz. 2012) (citing to *Syverson v. Int'l Business Machines Corp.*, 472 F.3d 1072, 1078–79 (9th Cir.2007)).

"Offensive use of collateral estoppel occurs when a plaintiff seeks to prevent the defendant from relitigating an issue the defendant previously litigated unsuccessfully in an action with another party; defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff previously litigated unsuccessfully against another party." *Parklane Hosiery Co.*, 439 U.S. at 326 n. 4. Plaintiff bears the burden of proving all the elements have been established. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050–51 (9th Cir.2008). District courts have broad discretion in deciding whether to apply offensive nonmutual collateral estoppel, and a decision not to apply it may only be reversed if the court abuses that discretion. *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003).

Here, all the elements of offensive nonmutual collateral estoppel are established. First, the parties fully litigated the issue of punitive damages in Judge Tuchi's four-day trial and his subsequent order contained an extensive discussion of this issue. Judge Tuchi denied Aramark's Motion to Transfer, in part, based on this reason, concluding "the findings of fact and conclusions of law in the *Meador* matter regarding . . . punitive damages [] are also relevant to the Lewis matter. But importantly for purposes of this analysis, they already have been decided in the *Meador* matter and such determinations would be res judicata in the *Lewis* matter, as the parties to whom those determinations pertain in in [sic] the *Lewis* matter had a full opportunity to litigate those precise questions.

As a result, the judge deciding the *Lewis* matter will not need to duplicate any labor on the above issues common to the two cases." (Doc. 41 at 3).

Second, the issue of punitive damages was actually litigated in the prior proceeding. Indeed, Judge Tuchi found that "[t]he evidence outlined above shows that Defendant was not only on notice that its boats were generating potentially dangerous wakes as they navigated Lake Powell, but also that it was unconcerned with this fact. This indicates Defendant's conduct was willful. The fact that there were not more wake-related incidents is fortunate, but it does not excuse or justify Aramark's conduct. The Court finds that Defendant showed a 'reckless indifference for the rights of others' and punitive damages are warranted." (Doc. 37-1 at 39–40).

Third, there is no dispute that Judge Tuchi's order finding Plaintiffs entitled to judgment on their punitive damages claim was a final decision on the merits. Fourth, the party against whom issue preclusion is asserted, Aramark, was a party to the prior action. In the *Meador* matter Aramark was a defendant and Mr. Meador was cross-claimed as a defendant. Both are now defendants in this matter. Aramark does not dispute this element. (Doc. 38 at 3).

Last, Aramark asserts that "[t]he question of causation is critical with respect to whether collateral estoppel may be applied to the prior punitive damage ruling." (Doc. 38 at 3). Aramark contends that Judge Tuchi's punitive damages award was grounded in a relationship between Aramark's conduct and Ms. Meador's injury and that Judge Tuchi made this finding only after reviewing the expert and percipient witness testimonies about how Ms. Meador's injury occurred. (*Id.* at 5). Those facts, Aramark argues, have not been developed in this case and are necessarily different from the prior case. (*Id.*)

While the issue of causation regarding Ms. Lewis's injuries is different, Plaintiffs point out, and this Court agrees, that the punitive damages claims against Aramark are the same in all the federal litigation pending against Aramark. (Doc. 39 at 2). To that end, Judge Tuchi's order made clear that "[Aramark] was aware of its issues with wakes long before Ms. Meador was injured" and "despite being aware of wake-related injuries, [] made

a conscious decision against discussing these risks with its tour boat captains, even though they may have been the employees best positioned to prevent future accidents." (Doc. 37-1 at 35–37). The *Meador* matter did not address Ms. Lewis's injuries or her son's possible contributing negligence, and those issues will have to be proven during this trial. Whether Aramark's conduct was willful, however, has already been litigated and decided. Nonetheless, the Court understands Aramark's argument that it would be premature to rule on the issue of punitive damages before determining the issue of negligence as to Ms. Lewis's injuries.

For this reason, the Court finds that Plaintiff's offensive use of collateral estoppel as to the issue of punitive damages is permissible based on Judge Tuchi's final decision that Aramark's conduct was willful. The Court will nonetheless deny Plaintiffs' Motion at this juncture because the Court has not determined Aramark's negligence and thus a ruling on punitive damages would be premature. Should the Court ultimately find Aramark negligent, however, then the issue of punitive damages need not be relitigated, as collateral estoppel applies.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment on the issue of punitive damages (Doc. 37) is **denied** as premature.

Dated this 14th day of November, 2022.

_____
Honorable Diane J. Humetewa
United States District Judge